IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-01646-PAB-MJW

GEORGE SISNEROS,

    Plaintiff,

v.

OFFICE OF PUEBLO COUNTY SHERIFF,
KIRK M. TAYLOR, Pueblo County Sheriff,
PUEBLO COUNTY SHERIFF'S DETENTION CENTER,
JOHN and JANE DOE deputies and employees, (to be later specifically identified) of Pueblo County Sheriff and Detention Center,
CORRECTIONAL HEALTHCARE MANAGEMENT, INC., a corporation authorized to conduct business in the State of Colorado,
JOHN DOE (to be later specifically identified), individually and in his capacity as an agent or employee of Correctional Healthcare Management, Inc.,
JANE DOE (to be later specifically identified), individually and in her capacity as an agent or employee of Correctional Healthcare Management, Inc.,
JOHN/JANE DOE, physicians and medical treatment providers (to be later specifically identified) at the Pueblo County Sheriff's Detention Center,
CITY OF PUEBLO,
JAMES W. BILLINGS, JR., Chief of Police of Pueblo,
CATHOLIC HEALTH INITIATIVES COLORADO, d/b/a St. Mary-Corwin Medical Center of Pueblo, Colorado,
PETER ELLIOTT, M.D.,  and
JOHN/JANE DOE physicians and medical treatment providers (to be later specifically identified) at St. Mary-Corwin Medical Center,

    Defendants.

---

# ORDER

---

    This matter is before the Court on the motion for summary judgment [Docket Nos. 168, 169] filed by defendants Office of Pueblo County Sheriff, Kirk M. Taylor, and Pueblo County Sheriff's Detention Center.  The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**

The following facts, unless otherwise indicated, are not in dispute. On July 18, 2007 at around 11:00 a.m., plaintiff began drinking in an alley in Pueblo, Colorado. After drinking a 40-ounce bottle of beer, plaintiff entered the East Side Tavern, where he drank "a couple of beers." Docket No. 169 at 4, ¶ 2; Docket No. 175 at 2. Upon leaving the East Side Tavern, plaintiff and a friend purchased and drank more alcohol and went to the friend's house from between 1:00 p.m. and 2:00 p.m. Plaintiff then returned to the alley near the East Side Tavern and may have passed out in the alley for some period of time upon his return.

Shortly before 10:00 p.m. that evening, an unidentified man offered plaintiff a two-inch folding knife. Plaintiff, who was still intoxicated at the time, put the knife in his pocket and then attempted to enter the East Side Tavern. Dwayne Williams, who worked at the East Side Tavern, would not permit plaintiff to enter the bar, at which time plaintiff pulled out the knife and pointed it at Mr. Williams. Mr. Williams went back inside the East Side Tavern, and plaintiff walked over to and leaned against a nearby building.[1]

Shortly after 10:00 p.m. that evening, defendant Ronald Oreskovich, a police officer for the City of Pueblo, received a dispatch that plaintiff was "in front of the East Side Tavern waving a knife around." Docket No. 169 at 5, ¶ 14; Docket No. 175 at 2. Oreskovich arrived at the East Side Tavern a few moments later and recognized

---

[1]Plaintiff disputes this fact to the extent it is based upon what Officer Ronald Oreskovich, who arrived shortly thereafter, "saw or believed." Docket No. 175 at 2. Plaintiff, however, does not dispute that he was leaning against a nearby building or cite evidence to the contrary.

plaintiff.[2]  Oreskovich saw plaintiff holding a paper bag in his hand in which he suspected there was a beer can.[3]  Oreskovich claims that he also saw what he thought was a knife in plaintiff's left hand.[4]  Oreskovich drew his firearm with his right hand and aimed it at plaintiff.  He approached plaintiff while giving loud commands for plaintiff to drop what he had in his hand.  Plaintiff did not comply.  Rather, he turned so that his left hand was by his side, hidden from Oreskovich's view, and began walking away from Oreskovich.[5]  Oreskovich "used his left hand to grab [plaintiff] by his right shoulder and forcefully pushed him to the ground."  Docket No. 169 at 6; Docket No. 175 at 2.  As plaintiff was falling to the ground, Oreskovich also saw a knife fall to the ground.

Oreskovich put his left knee on plaintiff's back to restrain him.  Oreskovich saw blood on the ground and that plaintiff had injured his face and, therefore, radioed a request for medical assistance.  An ambulance transported plaintiff to the hospital.  Plaintiff does not recall being transferred to the hospital.  Upon waking up in the hospital emergency room, plaintiff felt numb and that his legs were not functioning properly.

After interviewing witnesses at the East Side Tavern, Oreskovich went to the hospital, intending to charge plaintiff with felony menacing.  Upon arrival, Oreskovich

---

[2]Plaintiff disputes this fact to the extent it is based upon what Oreskovich "saw or believed," but does not specifically dispute that Oreskovish recognized him or offer evidence to refute what Oreskovish testified he saw.  Docket No. 175 at 2.

[3]*See supra* n.1 & n.2.

[4]*See supra* n.1, n.2 & n.3.

[5]Plaintiff does not dispute that he moved in this manner.  He does dispute that he was "'hiding' an object in his hand from Officer Oreskovich."  Docket No. 175 at 2.

learned that plaintiff had been treated for a laceration above his right eye.  Medical personnel determined that plaintiff had a blood alcohol level of 0.336 percent.  At about 1:20 a.m. on July 19, 2007, the hospital cleared plaintiff for discharge and a nurse wheeled plaintiff to Oreskovich's patrol car and helped plaintiff get in the back seat with his hands cuffed in front of him.  Plaintiff does not recall leaving the hospital.  Oreskovich called dispatch to inform the Pueblo County Sheriff's Office Detention Center that plaintiff would need assistance getting out of the patrol car.  Oreskovich and plaintiff arrived at the detention center shortly after 1:30 a.m., where multiple sheriff's deputies removed plaintiff from the car and transported him into the jail.

Once inside the jail, plaintiff was searched and placed in a chair while he was processed.[6]  Because plaintiff was intoxicated and not moving his legs, deputies dragged him into a holding cell and dropped him on the floor, resulting in a cut to plaintiff's left eye.[7]  Nurses at the jail examined plaintiff's cut and then plaintiff was taken back to the hospital for treatment.  A hospital employee told one of the deputies that there was nothing wrong with plaintiff.  After having the laceration over his eye treated, plaintiff was medically cleared by hospital personnel and returned to the jail.

---

[6]Plaintiff had been brought to the jail approximately 50 prior times.  Occasionally, he was permitted to sleep in the jail until he was sober, when he would be released.

[7]Defendants contend that they dropped him inadvertently.  Plaintiff disputes that it was inadvertent.  Furthermore, in support of his claims, plaintiff relies upon an earlier act of the deputies permitting him to fall to the ground.  *See* Docket No. 175 at 11.  Plaintiff did not provide his own statement of undisputed facts or cite the record in support of these contentions.  The events described, however, are revealed by the videotape supplied by defendants.  For the reasons stated below, the acts of the deputies, without the submission of any other evidence, is insufficient to overcome the present motion for summary judgment by their supervisor, defendant Taylor.

Upon his return to the jail at approximately 3:00 a.m., two deputies placed plaintiff in a wheelchair, moved him into a holding cell, and placed him reclining against a wall. Around 5:30 or 6:00 p.m., plaintiff informed a deputy that he could not walk.[8] The deputy attempted to assist plaintiff to stand. When he could not, she immediately called for medical assistance. Plaintiff, who was still intoxicated at the time, was assessed at the jail clinic and then transported in a neck collar and backboard to a different hospital than where he was treated the evening before, arriving at approximately 6:30 p.m. At the hospital, plaintiff was diagnosed with central cord syndrome which has resulted in plaintiff being paralyzed.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and

---

[8]In response to the motion, plaintiff argues that, "[a]t 11:00 a.m., the Detention Center's lay medical agents noted Plaintiff's complaint that his legs, feet and arms were numb and that all morning long he had been unable to move." Docket No. 175 at 13. Plaintiff, however, did not contest the defendants' recitation of the chronology, provide his own statement of undisputed facts, or cite the record in support of his argument.

preclude summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

As a preliminary matter, defendants Office of Pueblo County Sheriff and Pueblo County Sheriff's Detention Center contend that, because they are not separate entities from the elected Pueblo County Sheriff, defendant Taylor, all claims must be dismissed against them, which plaintiff does not dispute.  The Court, therefore, will dismiss all claims against defendants Pueblo County Sheriff's Office and Pueblo County Sheriff's Detention Center.  The following discussion will therefore be limited to plaintiff's claims against defendant Taylor.

### A.  Federal Law Claims

In the motion for summary judgment, defendant Taylor seeks summary judgment on plaintiff's claims of excessive force brought pursuant to 42 U.S.C. § 1983.  In regard to plaintiff § 1983 claims, defendant Taylor asserts the defense of qualified immunity.  Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis.  *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008).  Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory

right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)).  The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right.  *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007).

Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).[9]  However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished."  *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). The Court may exercise its discretion "in deciding which of the two prongs of the

---

[9]In *Prison Legal News, Inc. v. Simmons*, 401 F. Supp. 2d 1181, 1189-90 (D. Kan. 2005), the court noted that the quoted language "from other circuits" appears to be a misquote of the Tenth Circuit's decision in *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), where the court used the language "from other courts."  That misquote first appeared in *Murrell v. School District No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999), and has since appeared repeatedly in Tenth Circuit cases.  The *Prison Legal News* court, though concluding that the "misquote was merely a scrivener's error" and was not meant as a substantive change to the legal standard, added that "the fact that this error has not been discussed in a reported case from the Tenth Circuit suggests that the error may not be very significant."  401 F. Supp. 2d at 1191.  "In other words, although the circuit may be willing to consider cases from courts beyond the federal appellate courts, the focus should normally be on cases decided by other circuits."  *Id.*

qualified immunity analysis should be addressed first in light of the circumstances." *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

Here, the Court will begin by addressing whether plaintiff has identified evidence that defendant Taylor violated his constitutional rights. Plaintiff's excessive force claims arise out of the force applied by defendant Taylor's subordinates. Plaintiff does not contend that defendant Taylor had any interaction with him. Therefore, in order to proceed against defendant Taylor, plaintiff must identify evidence connecting Taylor to the conduct at issue, as personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

To establish personal participation by defendant Taylor, there must be evidence that he caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In other words, there must be an affirmative link between the alleged constitutional violation and defendant Taylor's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Defendant Taylor may not be held liable for the unconstitutional conduct of his subordinates on a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1948 (2009). The record must contain evidence that would permit a jury to find "not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and

demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199. Here, plaintiff relies entirely upon the conduct of the deputies and attempts to infer participation by Taylor from such conduct.[10] He points to no evidence, however, that defendant Taylor either "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" that resulted in the force applied or that he "acted with the state of mind required to establish the alleged constitutional deprivation."

Plaintiff argues that "the policy of inadequately training or supervising law enforcement officers may serve as a basis for § 1983 liability, where the failure to train or supervise amounts to 'deliberate indifference.'" Docket No. 175 at 7 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove that the training was in fact inadequate, and then satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come in contact; and (4) there is a direct causal link between the constitutional deprivation and inadequate training.

*Rossiter v. Robinson*, 716 F. Supp. 2d 1018, 1027 (D. Colo. 2010) (citing *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003)); *cf. Seybold v. Cooke*, No.

---

[10]Plaintiff has never brought the deputies involved into this case, having only named "John/Jane Doe deputies and employees (to later be specifically identified) of Pueblo County Sheriff and Detention Center" as defendants. *See* Docket No. 94 (Third Amended Complaint) at 1.

08-cv-00916-DME-MJW, 2010 WL 685798, at *10 (D. Colo. Feb. 23, 2010) ("As to her claim against the Sheriff in his official capacity, the Court will treat that claim as one against a local government entity.").

Plaintiff has identified no evidence that the "training was in fact inadequate," that such training demonstrates a "deliberate indifference" on the part of defendant Taylor, or that it was causally linked to the alleged violation. In fact, there is absolutely no evidence regarding the nature of training received by the deputies in this case or defendant Taylor's supervision of his employees. Plaintiff simply speculates, and supplies an expert report doing the same,[11] that the conduct of the deputies establishes that they were inadequately trained and supervised. *Cf. City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989) ("Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*."). It is insufficient, however, to simply identify potential violations by subordinates. In the absence of *any* evidence of personal participation by defendant Taylor or regarding any failure to train

---

[11] Plaintiff has submitted an expert affidavit of Mark Pogrebin, Ph.D., a professor of criminal justice and public affairs at the University of Colorado at Denver. *See* Docket No. 175-1. Pogrebin opines that the deputies used excessive force and that "their use of excessive force so openly conducted and without any fear for organizational discipline leads this expert to believe that such unsupervised excessive use of forceful behavior with inmates is condoned by the jail's administration." Docket No. 175-1 at 3-4, ¶ 29. First, this again attempts to infer involvement by defendant Taylor from nothing more than the use of force by the deputies. This is a thinly veiled attempt to support liability on a *respondeat superior* theory. Furthermore, and in any event, Pogrebin cites no evidence that the deputies were not in fact disciplined. There is simply no evidence regarding what sort of training the deputies received prior to the incident or what occurred afterward that would support an inference of involvement by defendant Taylor.

or supervise by defendant Taylor, plaintiff may not proceed on his excessive force claims against him in either his individual or official capacities.[12] And, in light of that failure to identify evidence of a constitutional violation by defendant Taylor, there is no need to address whether the alleged violation was clearly established at the time.

### B. State Law Claims

Plaintiff has also brought what he has described as "State Law Claims" against defendant Taylor for "willful and wanton assault, battery, brutality and outrageous conduct." Docket No. 94 at 13, ¶ 60. Furthermore, the only other remaining claims in this case are state law claims against other defendants. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over these state law claims, but "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if," as is the case here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

As a general proposition, "[p]endent jurisdiction is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants." *Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997). In the specific context of § 1367(c)(3), however, the Tenth Circuit has concluded that, "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal

---

[12] In *City of Canton*, the Supreme Court stated that, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392 (citations omitted). The Supreme Court sought to avoid "engag[ing] the federal courts in an endless exercise of second-guessing municipal employee-training programs." *Id.* Here, even assuming the Court were permitted to engage in such second guessing, plaintiff provides no evidence upon which any such scrutiny could be based.

court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" *Id.* (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)). The reason courts should dismiss such claims is that "'[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir.1995)).

A court's exercise of discretion, it would seem, is limited to determining whether compelling reasons justify retaining jurisdiction. In *Kosak v. Catholic Health Initiatives of Colo.*, 2009 WL 3497782 (D. Colo. Oct. 28, 2009), the court retained supplemental jurisdiction over state claims, weighing the "values of judicial economy, convenience, fairness, and comity," and granted summary judgment on all the pending federal and state claims. *Id.* at *7-8 (citing *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997)). The *Kosak* court concluded that, "[i]f this Court remands the action and does not address the substantive merits of the summary judgment motion – a motion on which the Court is otherwise prepared to rule – both parties would be disadvantaged by the inevitable delay that would almost certainly result from remand." *Id.* at *8. In this case, where the Court is prepared to rule on defendant Taylor's pending summary judgment motion on the state law claims, but where the state law claims against the remaining defendants are not ripe for resolution, traditional considerations of judicial economy do not clearly justify the exercise of supplemental jurisdiction. In any event, recent opinions of the Tenth Circuit appear to foreclose the Court from considering such factors as compelling reasons to retain jurisdiction. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010); *Endris v. Sheridan County*

*Police Dep't*, 2011 WL 441694 (10th Cir. Feb. 9, 2011) (unpublished).

In *Brooks*, after reaffirming that courts have discretion to determine whether to exercise supplemental jurisdiction after dismissal of all federal claims, the court affirmed the district court's dismissal of the federal claims but reversed the district court's granting of summary judgment on state law claims. *See Brooks*, 614 F.3d at 1230. Arguably, the *Brooks* decision was motivated by the fact that a potentially difficult question of state law was presented by the case. *See id.* (concluding that the state law claims where best left to the state court "including whether Colorado Revised Statute § 13-80-119 and/or § 18-1-707, as applied specifically to peace officers, require either objective or subjective reasonable force"). But, since the *Brooks* decision, the Tenth Circuit concluded in *Endris* that "any state-law claims for assault and battery or mental and emotional distress were *inappropriate* subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed." *Endris*, 2011 WL 441694, at *2 (citing *Brooks*, 614 F.3d at 1229) (footnote omitted) (emphasis added). The *Endris* court made no mention of either the complexity or novelty of those state law claims. Furthermore, and in any event, complexity and novelty are independent bases for declining to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1).

In short, it is far from clear what, if any, discretion the Court retains to exercise jurisdiction over the state law claims in this case. At least one commentator has stated that "there is a substantial caselaw, handed down in a variety of situations, suggesting in the aggregate that [when § 1367(c)(3) applies] judicial discretion is a particularly important element. Here the 'may' in 'may decline' has a major role to play." *See* David

D. Siegal, *Commentary on 1988 Revision: The 1990 Adoption of § 1367, Codifying "Supplemental" Jurisdiction*, 28 U.S.C.A. § 1367, at 766 (2006).[13] However, the Tenth Circuit's application of § 1367(c)(3) in *Brooks* and *Endris* suggests precisely the opposite is true.

Here, the federal claims have been dismissed and a trial has yet to be scheduled on the remaining state law claims. Consequently, even if potential delay were still a valid consideration when determining whether to exercise supplemental jurisdiction pursuant to § 1367(c)(3), it is not at all clear that dismissal of the state law claims without prejudice will delay their ultimate resolution.[14] However, the Court will permit the parties to brief the issue, addressing the question of whether any compelling reason consistent with the *Brooks* and *Endris* decisions supports the continued exercise of supplemental jurisdiction in this case.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the motion for summary judgment [Docket Nos. 168, 169] filed by defendants Office of Pueblo County Sheriff, Kirk M. Taylor, and Pueblo County

---

[13] *See id.* ("The House Report of the Committee on the Judiciary (Report 101-734, p. 29) said of subdivision (c) that it requires the district court, in exercising discretion, to undertake, as it did under prior law, 'a case-specific analysis.'").

[14] *Cf. Brooks*, 614 F.3d at 1230 ("Colorado law recognizes if a plaintiff asserts all of his or her claims, including state law claims, in federal court, and the federal court declines to exercise supplemental jurisdiction over the state claims, the plaintiff may refile those claims in state court.*")* (citations, quotation marks and alterations omitted); *see* 28 U.S.C. § 1367(d) (providing that the state law statute of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

Sheriff's Detention Center is GRANTED in part.  The Court grants summary judgment to defendant Taylor on plaintiff's § 1983 claims and reserves judgment on the state law claims addressed in the motion.  It is further

**ORDERED** that all of plaintiff's claims against defendants Pueblo County Sheriff's Office and Pueblo County Sheriff's Detention Center are dismissed.  It is further

**ORDERED** that, on or before **Thursday, May 19, 2011**, the parties may file briefs not exceeding five pages on the question of whether this Court can and should retain supplemental jurisdiction over the remaining state law claims.

DATED May 9, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge